294

## Application of MASON.
### Patent Appeal No. 5093.

Court of Customs and Patent Appeals.

March 6, 1946.

Fishburn & Mullendore, of Kansas City, Mo. (Emory L. Groff, of Washington, D. C., and Claude A. Fishburn, of Kansas City, Mo., of counsel), for appellant.

W. W. Cochran, of. Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting, in view of the prior art, all of the claims, 10, 11, 12 and 13, of an application, Serial No. 421,-437, filed December 3, 1941, for a patent on "Combination Safety Head and Closure Valve."

The references relied on are as follows:

Smith (British), 20,873 of 1914;

Smith, 2,047,750, July 14, 1936;

Blondel (Swiss), 186,340, January 16, 1937;

Franck, 2,239,169, April 22, 1941.

Claims 10 and 12 are illustrative, and read as follows:

"10. A device of the character described including a valve casing having a valve chamber provided with a pressure inlet and a pressure outlet and an intermediate valve seat, a rupturable diaphragm closing said outlet from the valve chamber and subject to pressure admitted through said inlet, a valve member in the valve chamber, a bellows having one end attached to the valve member and its other end attached to the valve casing to suspend the valve member above said seat, the exterior of said bellows being subject to pressure acting on the rupturable diaphragm to contract said bellows and maintain suspension of the valve member above said seat as long as the pressure is retained by the diaphragm, and means acting on the valve member to seat the valve member when the pressure is released from the valve chamber responsive to rupture of the diaphragm."

"12. A device of the character described including a valve casing having a valve chamber provided with a pressure inlet and a pressure outlet and an intermediate valve seat, a rupturable diaphragm closing said outlet from the valve chamber and subject to pressure admitted through said inlet, a valve member in the valve chamber, a stem on the valve member, a bellows encircling the stem and having one end attached to the valve member and its other end provided with an annular flange engaging a circumferential shoulder of the valve casing, a cap carried by the valve casing and engaging said flange to seal said flanged end of the diaphragm and suspend the valve member over said seat, a spring seat carried by said stem, and a spring in the cap having one end engaging the spring seat and its other end engaging the .cap to effect seating of the valve member upon rupture of the diaphragm, the exterior of said bellows being subject to pressure retained in the valve chamber by the rupturable diaphragm to effect contraction of the bellows and retain the valving member in suspended position relative to the valve seat when the pressure is being retained by said diaphragm."

The application concerns a device intended to provide a safety means for the relief of excessively high pressure of a volatile fluid of gaseous character. It comprises a casing, the upper part of which is screw-threaded into the lower. Within the casing is a spring-motivated control valve, which remains unseated during normal pressure. Extending from the gas chamber of the valve is an outlet member closed by a rupturable membrane. When the pressure in the gas chamber reaches a point predetermined to be undesirable, the membrane is ruptured and the gas escapes through the outlet member until pressure is reduced to less than normal. Thereupon the control valve closes under pressure of the spring, cutting off the flow of gas. The ruptured membrane can be removed and one inserted in its place without dismantling the valve. As the pressure again rises to normal the control valve will be raised from its seat. The control valve is provided with a stem which extends upwardly through an opening in the upper portion of the valve, and around the upper part of the stem the spring is placed, between the upper end of the casing and a shoulder on the stem. A membrane, through which the valve stem passes, extends between the upper and lower parts of the casing. A tubular bellows surrounds the lower part of the valve stem and is held at its top end between the upper and lower parts of the casing just below the membrane, and its lower end is fastened to the body of the valve. The bellows is within the gas chamber, and its outside is subject to gas pressure while the inside is subject to atmospheric pressure. The spring is so adjusted that its pressure will seat the valve only when the gas pressure is below normal. No part of the valve or of the bellows contacts the walls of the casing.

The only difference between claim 10 and claim 11 is that the latter defines the valve member as being "loosely reciprocal" in the chamber. Claims 12 and 13 are more specific than claims 10 and 11, claim 13 differing from claim 12 in that it includes "said valve stem having an extension projecting through the cap and a knob on said stem for indicating position of the valve member in the valve casing."

The British patent to Smith relates to automatic safety devices attached to containers of fluid at super-atmospheric pressures. The device disclosed is provided with a diaphragm rupturable when the pressure of the fluid exceeds a predetermined limit. When this occurs a spring-actuated control valve is automatically moved to closed position in order to interrupt the flow of the fluid so that the diaphragm may be replaced without further loss of gas.

The United States patent to Smith relates to a fluid pressure relief valve in which is provided a means "for avoiding excessive loss of fluid after the device has functioned by stopping the flow when the pressure of the fluid is reduced by a desired amount." The device discloses a piston-actuated valve designed by spring means to seat on the inlet member thereof, thus cutting off the flow of gas. It is held in raised position by pressure which ruptures the diaphragm in the outlet member when excessive pressure is reached.

The Blondel patent is for a valve designed to control the pressure of liquefied gas. It comprises a stem or rod, spring-actuated, the spring being surrounded by a bellows in the gas chamber. When the spring is extended, the cone-shaped lower end of the stem closes the outlet. When predetermined pressure is sufficient to contract the spring the gas escapes through an opening member to relieve the pressure. When the pressure is relieved the cone-shaped stem again closes the inlet.

The Franck patent relates to pressure safety valves embodying a rupturable disk and designed to remain sealed until predetermined pressure is exceeded, whereupon the disk ruptures, relieving the pressure. The structure comprises a spring-actuated member designed to close the inlet and is operable at a lower pressure than that required to rupture the disk. The spring is sealed from the escaping fluid by means of a bellows. When the disk is ruptured and pressure reduced, the spring-actuated valve reseats itself to prevent further escape of the fluid. The ruptured disk may be replaced without taking the valve apart and without further loss of fluid.

█ Claims 10 and 11 were rejected by the examiner on the British patent to Smith, and further rejected upon the Franck patent in view of the Blondel patent. They were also rejected as unpatentable over the patent to Blondel in view of the patent of Franck and the British patent to Smith. Claim 12 was rejected on the Blondel reference in view of the United States patent to Smith. Claim 13 was rejected on the art as applied to claim 12, it being

stated that appellant's knob is described in his specification as providing for manual lifting of the valve from its seat, although in claim 13 the function of the stem and knob is said to be for the purpose of "indicating position of the valve member in the valve casing." The examiner held that the top of Blondel's device, also used for manual actuation of the valve, is in effect a knob for the same purpose as appellant described in his specification. Finally, all of the claims were rejected as unpatentable over the British patent of Smith or the Franck reference, showing a combination of a relief valve and disk designed to rupture at a greater pressure than that necessary to open the relief valve. The examiner held that there was no new cooperation between the disk and valve of appellant's apparatus over those disclosed in the references.

The Board of Appeals in its general affirmance held that the British patent discloses a structure which accomplishes the same result as that reached by appellant "in much the same way." It further held that the use of metallic bellows as a substitute for diaphragms and pistons was quite common, citing the Blondel patent as an example thereof. The board was of opinion that, while the Blondel patent shows no rupturable diaphragm in connection with the relief valve, nevertheless when high pressure unseats the Blondel valve the pressure on the bellows tends to hold it open against the spring pressure exerted in the opposite direction.

Both of the Smith references and the Franck patent disclose devices for the same use as that claimed in the structure of appellant. In each of them a rupturable diaphragm or disk closes the outlet, and when ruptured the escape of gas continues until the desired lower pressure is reached, when the valve is closed by pressure of a spring. The rejection of claims 10 and 11 as unpatentable over the British patent was based chiefly upon the principle that the bellows of appellant is the full equivalent of a piston, and no invention resides in the substitution of one for the other. In our opinion that reasoning was clearly proper. In the British patent the pressure of gas below the piston resists the downward movement of the valve caused by the spring pressure, and downward movement in the valve of appellant's device is resisted by gas pressure said to be due to the difference in inside and outside pressures on the wall of the bellows.

In our opinion claim 12 was properly rejected on the Blondel reference in view of the United States patent to Smith. We can see no reason why, if the device of Blondel were provided with a rupturable disk in the outlet and also with the spring seat mounted in the upper portion of the casing as taught by the United States patent to Smith, appellant's structure would not be completely anticipated.

As far as the rejection of claim 13 is concerned we are of opinion that the knob on the end of the stem projecting through the top of appellant's device, which is said in the claim to indicate the position of the valve member in the casing, is not patentable over the prior art. It surely would not involve invention to place a knob on the top of the stem in order to observe whether the stem was up or down, in view of the structure of the Blondel device. As hereinbefore pointed out, no such use was suggested for the knob in appellant's specification.

Appellant has vigorously urged in his brief that his claims should be held patentable not only because they are not anticipated by the prior art but because his valve has met with commercial success, for the reason that when used with corrosive liquids it does not tend to stick as do the devices of the prior art. It may well be that the sticking of valves was a problem in the art until the advent of appellant's device. However, there is nothing in the record to suggest such problem or its having been solved by appellant, and it has been repeatedly held that no weight can be given to statements of counsel unsupported by the record. In re Beeson, 100 F.2d 191, 26 C.C.P.A., Patents, 755.

Appellant further argues that the foreign patents should be given no weight for the reason that they do not show an exact anticipation of his device. As pointed out by the Solicitor in his brief, a foreign patent is a printed publication and may be properly considered in determining the patentability of claims. In re Cross, 62 F.2d 182, 20 C.C.P.A., Patents, 710.

We are in agreement with the tribunals below that there is no new cooperation between the disk and valve combination of appellant's device over that shown by the references, and therefore the decision of the Board of Appeals is affirmed.

Affirmed.